Murland W. SEARIGHT, Petitioner,

v.

NATIONAL TRANSPORTATION SAFE-TY BOARD, and Federal Aviation Administration, Respondents.

No. 85–1433.

United States Court of Appeals, Tenth Circuit.

Feb. 27, 1987.

---

J. Scott Hamilton, Broomfield, Colo., for petitioner.

Raymond R. Baca, Trial Atty. (Peter J. Lynch, Acting Chief, Enforcement Proceedings Branch, with him on the brief), AGC–250, Office of the Chief Counsel, F.A.A., Washington, D.C., for respondents.

Before BARRETT, TACHA, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Murland W. Searight, holder of Commercial Pilot Certificate No. 2006986, appeals to this court from an opinion and order of the National Transportation Safety Board. The Board's opinion and order held that Searight was careless and reckless in the operation of his aircraft in violation of Section 91.9 of the Federal Aviation Regulations, 14 C.F.R. § 91.9 (1986), and, as penalty therefor, ordered the suspension of Searight's certificate for a period of 45 days. The incident which forms the basis for the present proceeding occurred at Salt Lake City's No. 2 airport. The gist of the charges made against Searight by the Federal Aviation Administration is that he took off, landed and then took off again from the No. 2 airport in Salt Lake City, Utah, at a time when the airport was closed for purposes of snow removal and that in his take-offs and landing he flew his plane in close proximity to a snow blower and its operator, who was engaged in clearing snow off the runways. Our study of the matter convinces us that the suspension order is amply supported by the record, and, on that basis, we affirm.

Searight, a professional pilot who flies both commercially and for private purposes, his wife and father were at the time enroute to their home in Montana from a vacation in California. They landed in Salt Lake City, where they stayed overnight, enroute to the airport in Kalispell, Montana. It snowed about six inches during the night, and when Searight and his passengers went to the No. 2 airport around 8:00 a.m. they were advised that the airport was closed for snow removal operations. However, they remained at the airport, and eventually took off for Kalispell around noon, though the airport was not reopened until around 1:30 p.m. A control room log indicated that the airport was closed at 6:46 a.m. and reopened at 1:25 p.m.

In his testimony before the Administrative Law Judge (ALJ), Searight testified that he was advised when he arrived at the airport that it was closed and would be closed for several hours. Searight explained his noon take-off by stating that an unidentified "someone" had informed him that the airport was then open. Searight also testified that after his initial take-off he sensed that something was possibly "wrong" with his engine, so he landed at once. After satisfying himself that all was well, Searight stated he and his passengers again took off and thereafter proceeded without incident to Kalispell. Regarding the charge that he flew in close proximity to a snow blower and its operator, Searight stated that he never saw any snow blower.

In support of the charges against Searight, the Federal Aviation Administration (FAA) called five witnesses, including several airport employees whose testimony was percipient in nature. The gist of their combined testimony was that Searight and his two passengers took off when the airport was still closed and that he flew approximately 100 feet above the operator of the snow blower who was working on the runway.

On appeal in this court Searight urges three grounds for reversal of the Board's order: (1) The finding that Searight operated his aircraft in a reckless or careless manner endangering the life or property of others is not supported by substantial evidence; (2) The ALJ erred in excluding evidence offered by Searight for the purpose of showing that his operation of the aircraft was neither reckless nor careless; and (3) Searight was denied procedural due process because the ALJ was not an unbiased and nonpartisan trier of facts. None of these matters justifies reversal.

14 C.F.R. § 91.9 provides that "[n]o person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another." At the conclusion

of the hearing before the ALJ, the ALJ made an Oral Initial Decision and Order, which is capsulized as follows: (1) that Searight took off, landed and took off a second time when he knew, or should have known, that the airport was closed for the purpose of removing snow from the runway; (2) that he took off on runway 16 where a snow blower was being operated; (3) that Searight flew over the snow blower at about 50 to 100 feet, and that Searight's testimony that he never saw the snow blower on the runway was "inherently incredible"; and (4) that in so doing, Searight's conduct was reckless and dangerous to his two passengers and the operator of the snow blower.

■ On appeal to the Board, the Board upheld the ALJ's findings, except in two small particulars neither of which have bearing on the present appeal. In our view, the record supports this action of the Board. In other words, there is substantial evidence to support the Board's findings and order. *Sorenson v. National Transp. Safety Bd.*, 684 F.2d 683, 685 (10th Cir. 1982). Searight admittedly knew from the moment he arrived at the airport that it was closed and could only be reopened by order of the manager of the No. 2 airport, whose offices were at the Salt Lake City International Airport some seven miles away. Searight's only explanation for taking off when the airport was in fact still closed was that "someone" told him the airport had been reopened. The ALJ, as the trier of the fact, was not required to believe such a self-serving statement, which, as indicated, the ALJ stated was "inherently incredible." And whether "someone" so informed Searight is not particularly critical, since, it is agreed, the airport was not in fact reopened until about 1:30 p.m., and Searight took off around noon.

Further, the record supports the finding that Searight in using runway 16 flew more or less directly over the snow blower at a relatively low altitude. The operator of the snow blower testified that the airport was closed and he was removing snow on runway 16 with a bright yellow snow blower that was 32 feet long, 11 feet wide, and had a flashing light on the top. The operator stated that as he was proceeding down runway 16, with the wind at his back, an aircraft, which later was identified as Searight's Cessna 182, took off from runway 16 and flew approximately 50 to 100 feet above him. The operator added that he was surprised and frightened, because the airport was still under a closure order. Without belaboring the matter, it is quite evident that the ALJ's finding, later upheld by the Board, that Searight was guilty of operating his aircraft in a reckless or careless manner endangering the life or property of another is supported by substantial evidence. Indeed, the act of taking off from a closed airport is itself careless and reckless conduct endangering the lives of his passengers, at the least.

Searight's second ground for reversal is the exclusion of evidence which, according to Searight, tended to show that, on occasion, aircraft were routinely flown over or near operating machinery in close proximity to a runway. We have read the record in this connection and we find no such exclusion of evidence as would warrant reversal. The real basis for the suspension order is the undisputed fact that Searight took off from a closed airport using a runway where there was operating machinery which Searight didn't even see. Further, as is mentioned *supra*, at the conclusion of the FAA's case, Searight, in effect, discharged his lawyer and took over the conduct of his case with the comment that he did not desire to call any other witness than himself.

■ Perhaps Searight's main ground for reversal is that, in his view, the ALJ was prejudicial and partisan and that he, Searight, didn't get a fair trial. We don't get that from our reading of the record. It is true, by way of an example, that, in overruling an objection on the grounds of hearsay to Searight's attempted testimony that "someone" informed him the airport had been reopened, the ALJ commented that although hearsay was admissible in an administrative hearing of this sort he was going to be "up front" and apprise all at

that point that he was disinclined to give much weight to that type of testimony. Such, in our view, does not prove personal bias or prejudice against Searight.

Throughout the case there is the suggestion that Searight was somehow dealt with unfairly when the ALJ vacated his earlier order that this would be a bifurcated proceeding, wherein the FAA witnesses would be heard first in Salt Lake City, and that Searight would later put on his case in Helena, Montana. This order was entered for the convenience of both the FAA and Searight, the former's witnesses being residents of Salt Lake City, and Searight and his passengers being residents of Montana.

However, Searight and his attorney appeared at the hearing in Salt Lake City, and, such being the case, the ALJ then began to question the need for two hearings. But, in any event, after the FAA had completed its presentation of evidence in the Salt Lake City hearing, Searight's counsel, with express approval from Searight, was permitted to withdraw, citing differences between the two, and Searight then clearly indicated his desire to continue the hearing then in progress, stating that he would be the only witness, and that he desired to call no other witnesses. Searight's claim of personal bias and prejudice on the part of the ALJ is not supported by the record. *See Roach v. National Transp. Safety Bd.*, 804 F.2d 1147 (10th Cir.1986). In his opinion and order, the ALJ did clearly indicate that in his view it was a fairly open and shut case because Searight had undisputedly taken off at a time when the airport was closed and in so doing had flown over operating machinery. But again, such does not prove personal bias or prejudice against Searight.

Order affirmed.